169 N.J. Super. 127 (1979)
404 A.2d 346
EDWIN S. DARRELL AND JOHN SARAFIN, PLAINTIFFS-APPELLANTS,
v.
GOVERNING BODY OF THE TOWNSHIP OF CLARK, EXXON CORP., BOARD OF ADJUSTMENT OF THE TOWNSHIP OF CLARK, JOSEPH SWEENEY, BUILDING INSPECTOR OF THE TOWNSHIP OF CLARK, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued June 11, 1979.
Decided June 25, 1979.
*129 Before Judges FRITZ, BISCHOFF and MORGAN.
Mr. Paul R. Williams, Jr. argued the cause for appellants (Messrs. Williams & Flynn, attorneys; Mr. William John Schmelz on the brief).
Mr. Arnold M. Smith argued the cause for respondent Exxon Corporation (Messrs. Arnold M. Smith and Lewis J. Smith on the brief).
Mr. John Pisansky argued the cause for respondent Board of Adjustment of the Township of Clark (Messrs. Magner, Abraham, Orlando, Kahn & Pisansky, attorneys).
No one appeared on behalf of respondents governing body of the Township of Clark and Joseph Sweeney, Building Inspector.
PER CURIAM.
Plaintiffs, owners of two gasoline service stations in Clark Township, appeal from a trial court judgment affirming the township's grant of a variance pursuant to N.J.S.A. 40:55-39(d) to defendant Exxon Corporation for use of a lot, leased by the latter, as a gasoline station. We affirm that judgment substantially for the reasons given by the trial judge in his letter opinion of *130 February 1, 1978. We add only the following additional comments.
For the first time on appeal appellants contend that the governing body and the board of adjustment of the township were without jurisdiction to grant the challenged variance because other gasoline stations existed within 1,500 feet of the proposed gasoline station, and the township's zoning ordinance, which provided for such stations as a special exception use in the zone in which the proposed station was to be located, prohibited such stations to be located within that distance. According to appellants, that condition could not be altered, waived or avoided by variance or any other means. Brown Boveri, Inc. v. North Brunswick Tp. Comm., 160 N.J. Super. 179 (App. Div. 1978), is cited in support of this proposition.
We express respectful disagreement with that holding. In Harvard Ent., Inc. v. Madison Tp., Bd. of Adj., 56 N.J. 362 (1970), service stations were permitted as special exceptions in the zone, subject, however, to the condition that such gasoline stations be separated by at least 2,000 feet. The station proposed in Harvard did not meet that standard. A special exception permit was accordingly denied. Although the court's opinion did not purport to deal with plaintiffs' application for relief from the requirements of the special exception use, resting its opinion on the constitutionality of the distance requirement plaintiffs had been challenging, the concurring opinion, implicitly at least, recognized the availability of a subsection (d) variance where special reasons are shown to exist.
* * * A special exception under N.J.S.A. 40:55-39(b) could not be granted because at least the 2000 foot distance mandated by the ordinance stood in the way. So plaintiff also requested a variance from that requirement. Such would amount to a use variance under N.J.S.A. 40:55-39(d), which requires the existence of "special reasons" as well as meeting the negative criteria. The testimony offered could not possibly support a use variance. [56 N.J. at 369-370]
*131 Special exceptions under N.J.S.A. 40:55-39 (b) are permitted uses in a given zone subject to certain requirements which must be satisfied in order that a permit therefor may issue. Tullo v. Millburn Tp., 54 N.J. Super. 483 (App. Div. 1959). It makes no zoning logic to afford variance relief with respect to uses forbidden in a given zone while denying such relief to uses permitted therein albeit upon compliance with specified conditions. Certainly, nothing in the zoning law suggests, let alone compels, that conclusion. If bulk requirements are variable under subsection (c), we see no reason why distance requirements, or any other conditions to the granting of a special exception permit, should not be similarly variable under subsection (d). Authority upon which Brown Boveri, Inc. depends is dictum, appearing in cases of questionable current authority. Compare Ranney v. Istituto Pontificio Delle Maestre Filippini, 20 N.J. 189, 198-199 (1955), and Moriarty v. Pozner, 21 N.J. 199, 211 (1956), relied upon in Brown v. Boveri, Inc., supra at 186, with Black v. Montclair, 34 N.J. 105, 111-113 (1961). Although we need not have considered the issue because it was not only unmentioned in the trial court but because appellants agreed in the trial court that a subsection (d) variance was a permissible mode of relief, we have elected to do so and conclude, for the given reasons, that the contention lacks merit.
Finally, we feel constrained to comment upon the role played by Council President John Bodnar in the governing body's adoption of the resolution granting the variance. At the meeting at which the variance was under consideration, a statement was made by Councilman Dios to the effect that he thought it time to clean up the property upon which appellants proposed to erect the station and that the board of adjusment should be commended for recommending that the variance be granted. He further stated that the variance was not a use variance presumably because the use was by special exception. Council President Bodnar then stated, prior to the vote, that "he concurs with Mr. Dios' comments *132 but will be abstaining since he works for an affiliate of the Exxon Corporation, namely, the Exxon Chemical Company." Appellants contend that although Bodnar's abstention from voting was proper, his comment in support of Dios' favorable remarks requires that the resolution be set aside.
The trial judge concluded, on the basis of material before him, that Bodnar's interest in the variance was minimal if it existed at all. He said:
However, the evidence submitted to this court by the applicant showed that the Exxon Chemical Company is a division of the parent company which has no interest in the marketing of gasoline. Thus, Councilman Bodner's [sic] employer had no financial interest in the granting or denial of the variance.
Since Councilman Bodner did not vote, and since his employer had no interest, this court does not find that he improperly influenced the vote.
Although we affirm the trial court disposition of this unfortunate issue, we feel constrained to voice our vigorous and unequivocal disapproval of the action of one who deems himself disqualified from a vote but nevertheless uses his office, and whatever influence he may wield, to influence the votes of others. An official disqualified to vote on any measure, for any reason, must observe the substance as well as the form of his abstention. It simply is insufficient for him to decline to vote while, at the same time, he seeks to influence what that vote will be.
Our rejection of appellants' request that the resolution be set aside is based upon (1) the fact that a new consideration of the variance would, under the new Municipal Land Use Law, N.J.S.A. 40:55D-1 et seq., be committed to the board of adjustment without participation of the governing body, N.J.S.A. 40:55D-70(d), and the board of adjustment in this case recommended that the variance be granted; (2) the trial court finding of fact that Bodnar's employer had limited, if any, interest in the outcome of the variance application, and (3) the fact that Bodnar disclosed to the other *133 members the nature of his interest in the controversy. In these circumstances, we have concluded, on balance, that despite the clear impropriety, little will be gained by requiring reconsideration of the variance.
Affirmed.